**RIETMANN LAW, P.C.**
1270 Chemeketa St. NE
Salem, Oregon 97301
Tel: 503-551-2740
Fax: 888-700-0192

Nathan R. Rietmann (OSB #053630)

**WANGER JONES HELSLEY, P.C.**
265 E. River Park Circle, Suite 310
Freson, California 93720
Tel: 559-233-4800
Fax: 559-233-9330

John P. Kinsey
(Cal. Bar No. 215916)
*Admitted pro hac vice* on 06/05/19

Christopher A. Lisieski
(Cal. Bar. No. 321862)
*Admitted pro hac vice* on 06/05/19

Attorneys for:  Klamath Irrigation District

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MEDFORD DIVISON

| | |
|---|---|
| **KLAMATH IRRIGATION DISTRICT,**<br><br>                    Plaintiff,<br><br>    v.<br><br>**UNITED STATES BUREAU OF RECLAMATION, DAVID BERNHARDT, Acting Secretary of the Interior, in his official capacity, BRENDA BURMAN, Commissioner of the Bureau of Reclamation, in her official capacity, and ERNEST CONANT, Director of the Mid-Pacific Region, Bureau of Reclamation, in his official capacity, and JEFFREY NETTLETON, in his official capacity as Area Manager for the Klamath Area Reclamation Office.**<br><br>                    Defendants. | Consolidated Cases<br>Case No. 1:19-cv-00451-CL (leading)<br>Case No. 1:19-cv-00531-CL (trailing)<br><br>**PLAINTIFF KLAMATH IRRIGATION DISTRICT'S MEMORANDUM IN OPPOSITION TO MOTIONS TO INTERVENE BY HOOPA VALLEY TRIBE AND KLAMATH TRIBE**<br><br>**ORAL ARGUMENT REQUESTED COURT REPORTING REQUESTED** |

## TABLE OF CONTENTS

Page

1.  INTRODUCTION ..................................................................................1

2.  NATURE OF PLAINTIFF'S CLAIMS ..................................................3

3.  NATURE OF APPLICANTS' INTERESTS ...........................................8

    A.  1909 Oregon Water Rights Act ..................................................9

        i.  Water Right Act Created Permit System for
New Water Rights ..........................................................10

        ii.  Water Right Act Created General Stream Adjudication
Process for Determining Pre-1909 Water Rights ...........11

    B.  Oregon's General Stream Adjudication Process Is Comprehensive
and Encompasses All Federal Reserved Water Rights of the United
States and Indian Tribes ...........................................................12

    C.  Klamath Basin General Stream Adjudication Comprehensively
Determines All Pre-1909 Water Rights in UKL Reservoir, Including
Federal Reserved Water Rights of United States and Applicants ............15

        i.  Distribution of Water Pending Completion of Final
Order of Determination ..................................................16

        ii.  Distribution of Water Following Issuance of Final
Order of Determination ..................................................17

4.  PROCEDURAL BACKGROUND ......................................................21

5.  STATEMENT OF LAW ......................................................................22

6.  ARGUMENT ......................................................................................23

    A.  This Court Should Not Apply a Liberal Standard to Intervention ...........23

    B.  No Significantly Protectable Interest of the Applicants Is
Implicated in the Litigation ......................................................25

# TABLE OF CONTENTS (continued)

**Page**

      i.     Hoopa Valley Tribe .......................................................................26

      ii.    Klamath Tribes.............................................................................31

C.    Any Interest the Applicants May Have Will Not Be Impaired or Impeded By the Decision in This Case ....................................................32

D.    Whatever Interest the Applicants Have Is Adequately Represented By Reclamation, Which Acts As Trustee for the Tribes......34

7.    CONCLUSION ........................................................................................40

CERTIFICATE OF SERVICE.........................................................................41

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### Federal Cases

*Arakaki v. Cayetano,*
  324 F.3d 1078 (9th Cir. 2003) ............................................................... 25, 34

*Arizona v. California,*
  460 U.S. 605 (1983) ............................................................................... 37, 38

*Arizona v. San Carlos Apache Tribe,*
  463 U.S. 545, 103 S.Ct. 3201, 77 L.Ed.2d 837 (1983) ................................ 14

*California v. United States,*
  438 U.S. 645 (1978) ...................................................................................... 5

*California ex rel. Lockyer v. United States,*
  450 F.3d 436 (9th Cir. 2006) ................................................................. 32, 33

*Cappaert v. U. S.,*
  426 US 128, 96 S Ct 2062, 48 L Ed 2d 523 (1976) ..................................... 14

*Citizens for Balanced Use v. Montana Wilderness Ass'n,*
  647 F.3d 893 (9th Cir. 2011) ....................................................................... 23

*Colorado Water Conservation Dist. v. United States,*
  424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) ........................... 14, 29

*Confederated Tribes of the Chehalis Indian Res. v. Lujan,*
  928 F.2d 1496 (9th Cir. 1981) ..................................................................... 38

*Dave Drilling Env. Eng'g, Inc. v. Gamblin,*
  No. 14–cv–02851–WHO, 2015 WL 4051968 (N.D. Cal. July 2, 2015) ...... 24

*Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.,*
  276 F.3d 1150 (9th Cir. 2002) ..................................................................... 30

*Deus v. Allstate Ins. Co.,*
  15 F.3d 506, 526 (5th Cir. 1994) ................................................................. 32

*Dilks v. Aloha Airline,*
  642 F.2d 1155 (9th Cir. 1981) ..................................................................... 25

# **TABLE OF AUTHORITIES** (continued)

**Page(s)**

## **Federal Cases**

*Donnelly v. Glickman*,
  159 F.3d 405 (9th Cir. 1998) ....................................................................... 25

*Dubeau v. Sterling Sav. Bank*,
  No. 1:12–cv–01602–CL, 2013 WL 4591034 (D. Or. Aug. 28, 2013)........................ 24

*Forest Conserv. Council v. U.S. Forest Serv.*,
  66 F.3d 1489, 1496 n.8 (9th Cir. 1995) ........................................................ 23

*Greene v. United States*,
  996 F.2d 973 (9th Cir. 1993) ..................................................................... 25

*Hoopa Valley Tribe v. National Marine Fisheries Service*,
  230 F. Supp. 3d 1106 (N.D. Cal. 2017) ........................................................ 39

*Ivanhoe Irr. Dist.*,
  357 U.S. at 291 ..................................................................................... 29

*Klamath Water Users Protective Ass'n v. Patterson*,
  204 F.3d 1206 (9th Cir 1999), reh'g, 203 F.3d 1175 (9th Cir. 2000) ..................... 26

*League of United Latin Am. Citizens v. Wilson*,
  131 F.3d 1297 (9th Cir. 1997) ................................................................... 35

*Makah Indian Tribe v. Verity*,
  910 F.2d 555 (9th Cir. 1990) ..................................................................... 38

*Manybeads v. United States*,
  209 F.3d 1164 (9th Cir. 2000) ................................................................... 38

*Montana v. Wyoming*,
  563 US 368, 131 S Ct 1765, 179 L Ed 2d 799 (2011)...................................... 9

*Nebraska v. Wyoming*,
  325 US 589, 65 S Ct 1332, 89 L Ed 1815 (1945).......................................... 4

*Nevada v. United States*,
  463 U.S. 110 (1983)............................................................................ 36, 38

# **TABLE OF AUTHORITIES** (continued)

**Page(s)**

**Federal Cases**

*Newby v. Enron Corp.*,
443 F.3d 416 (5th Cir. 2006) ............................................................. 32, 33

*Northern Cheyenne Tribe v. Adsit*,
721 F.2d 1187 (9th Cir. 1983) ................................................................ 14

*Nw. Forest Resource Council v. Glickman*,
82 F.3d 825, 836 (9th Cir. 1996) ............................................................ 22

*Pac. Live Stock Co. v. Lewis*,
241 US 440, 36 S Ct 637, 60 L Ed 1084 (1916) ............................. 12, 18, 20

*Pacific Northwest Generating Co-op v. Brown*,
822 F. Supp. 1479 (D. Or. 1993) ............................................................ 40

*Perry v. Prop. 8 Official Proponents*,
587 F.3d 947 (9th Cir. 2009) .................................................................. 35

*Pit River Home & Ag. Coop. Ass'n v. United States*,
30 F.3d 1088 (9th Cir. 1994) .................................................................. 38

*Prete v. Bradbury*,
438 F.3d 949 (9th Cir. 2006) .................................................................. 22

*Quileute Indian Tribe v. Babbitt*,
18 F.3d 1456 (9th Cir. 1994) .................................................................. 38

*San Luis & Delta-Mendota Water Auth. v. Haugrud*,
848 F.3d 1216 (9th Cir 2017) ...................................... 2, 28, 30, 33

*Shermoen v. United States*,
982 F.2d 1312 (9th Cir. 1992) ................................................................ 38

*Sierra Club v. EPA*,
995 F.2d 1478, 1484 (9th Cir. 1993) ...................................................... 25

*Sw. Ctr. for Biological Diversity v. Berg*,
268 F.3d 810 (9th Cir. 2001) ............................................................ 22, 25

*Tyson v. Nationstar Mortg. LLC*,
No. 15-cv-01548-BLF, 2016 WL 39903 (N.D. Cal. Jan. 4, 2016) .............. 31

**<u>TABLE OF AUTHORITIES</u> (continued)**

**Page(s)**

**Federal Cases**

*United States v. Adair*,
   723 F2d 1394 (9th Cir 1983) ..................................................... 15

*United States v. Alisal Water Corp.*,
   370 F.3d 915 (9th Cir. 2004) ..........................................23, 32, 33

*United States v. City of Los Angeles*,
   288 F.3d 391 (9th Cir. 2002) ............................................... 23, 35

*United States v. Newman*,
   441 F.2d 165 (5th Cir. 1971) ..................................................... 24

*United States v. State of Cal., State Water Res. Control Bd.*,
   694 F2d 1171 (9th Cir 1982) ....................................................... 5

*United States v. State of Or.*,
   44 F.3d 758 (9th Cir 1994) ...................................9, 10, 15, 16, 20

*United States v. Superior Court in and for Maricopa County*,
   144 Ariz. 265, 697 P.2d 658 (1985) ......................................... 14

*United States v 71.22 Acres of Land, More or Less Situated in Utah Cty*,
   665 F Supp 885 (D Utah 1987)................................................. 29

*White Mountain Apache Tribe v. Hodel*,
   784 F.2d 921 (9th Cir. 1986) ........................................ 14, 36, 38

*White v. University of California*,
   765 Fed 1010, 1027 (9th Cir 2014)........................................... 40

*Wilderness Soc'y v. U.S. Forest Serv.*,
   630 F.3d 1173 ................................................................... 23, 24

**State Cases**

*Fort Vannoy Irr. Dist. v. Water Res. Comm'n*,
   188 P.3d 277 (Or. 2008) ........................................................... 10

# **TABLE OF AUTHORITIES** (continued)

**Page(s)**

## **State Cases**

*Rettkowski v. Department of Ecology,*
    858 P.2d 232 (Wash. 1993) ........................................................................ 16

*Skinner v. Jordan Valley Irr. Dist.,*
    137 Or. 480, 300 P. 499, 137 Or. 480, 3 P.2d 534 (1931) ............................ 4

*South Delta Water Agency v. U.S., Dept. of Int.,*
    767 F.2d 531 (1985) ................................................................................... 16

*Teel Irr. Dist. v. Water Res. Dep't of State of Or.,*
    323 Or 663, 919 P2d 1172 (1996) .............................................................. 9

## **Statutes**

Fed. R. Civ. P. 12 ............................................................................................. 1

Fed. R. Civ. P. 24 ................................................................................ 1, 2, 23

16 U.S.C. § 1540 .............................................................................................. 2

25 U.S.C. § 5108 ........................................................................................... 36

43 U.S.C. § 371 ................................................................................................ 4

43 U.S.C. § 373 .............................................................................................. 28

43 U.S.C. § 383 .............................................................................................. 29

43 U.S.C. § 421 .............................................................................................. 28

43 U.S.C. § 661 .............................................................................................. 29

43 U.S.C. § 666 ........................................................................................ 13, 14

ORS 537 ........................................................................................................ 13

ORS 537.120 ................................................................................................. 10

ORS 537.130 ................................................................................................. 18

## TABLE OF AUTHORITIES (continued)

**Page(s)**

### Statutes

ORS 537.143 ................................................................................................ 7, 28

ORS 537.170 ..................................................................................................... 18

ORS 539 ............................................................................................................. 11

ORS 539.010 ..................................................................................................... 13

ORS 539.021 ..................................................................................................... 11

ORS 539.030 ..................................................................................................... 11

ORS 539.040 ..................................................................................................... 11

ORS 539.070 ..................................................................................................... 11

ORS 539.100 ..................................................................................................... 11

ORS 539.110 ..................................................................................................... 11

ORS 539.120 ..................................................................................................... 11

ORS 539.130 ..................................................................................................... 11

ORS 539.150 .................................................................................................. 11,12

ORS 539.170 ..................................................................................................... 18

ORS 539.180 ..................................................................................................... 18

ORS 539.210 ................................................................................................ 12, 19

ORS 540.180 ................................................................................................. 7, 28

ORS 540.510 ..................................................................................................... 13

ORS 540.530 ..................................................................................................... 13

ORS 540.720 ..................................................................................................... 10

ORS 545 .............................................................................................................. 3

## **TABLE OF AUTHORITIES** (continued)

**Page(s)**

### Statutes

ORS 545.002 ......................................................................................... 3

ORS 545.007 ......................................................................................... 3

ORS 545.025 ......................................................................................... 3

ORS 545.043 ......................................................................................... 3

ORS 545.253 ......................................................................................... 3

Rule 24 ................................................................................................ 23

### Other Authorities

7C Wright, Miller & Kane, § 1909, at 332 ........................................... 34

445 Oregon Laws 2015 §§ 1-2 ........................................... 4, 7, 27, 28

1909 Oregon Laws Chapter 216 ........................................................ 10

1909 Water Rights Act ................................................... 8, 9, 10, 11, 12

Endangered Species Act ................................................................ 2, 33

McCarran Amendment ................................................................. *passim*

Reclamation Act § 7 ...................................................... 6, 7, 27, 28

Reclamation Act § 8 ........................................................... 6, 8, 17

Reclamation Act of 1902, ch. 1093, 32 Stat. 388 .......................... 4, 5, 38

https://www.opb.org/news/article/klamath-tribes-call-in-their-water-rights/ ................. 21

https://www.oregon.gov/OWRD/programs/WaterRights/Adjudications/Kla
mathRiverBasinAdj/Pages/default.aspx ........................................... 18

https://www.usbr.gov/mp/kbao/programs/docs/klamath-project-biological-
opinion.pdf (page 4) ........................................................................ 17

United States Constitution Fifth Amendment ............................ 6, 25, 26

1.    **INTRODUCTION**

The Hoopa Valley Tribe and Klamath Tribes (collectively "Applicants") seek to intervene as a matter of right pursuant to Fed. R. Civ. P. 24(a)(2). (Doc. No. 21 and No. 29). Applicants' sole reason for requesting intervention is to file a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(7) and (19), contending Applicants are indispensable parties who cannot be joined by virtue of claimed sovereign immunity. (Doc. No. 21 Exhibit 1; Doc. No. 29 Exhibit 1). Using this litigation tactic, Applicants hope to prevent Plaintiff Klamath Irrigation District's ("Plaintiff") claims from ever being decided on the merits.

Applicants' motion to intervene as a matter of right should be denied. Applicants do not claim substantially protectable interests "relating to the property or transaction that is the subject of this action." Fed. R. Civ. P. 24(a)(2). While Applicants assert they have interests in the "fish and water of the Klamath Basin" (Doc. No. 29 at 3) and "federal reserved fishing and water rights that are protected under federal law" (Doc. No. 21 at 20), an accurate understanding of Plaintiff's claims, and Applicants asserted interests, shows that Applicant's interests do not relate to the specific water rights, contracts, and civil rights that are the subject of this action.  Specifically, through this action, Plaintiff does not seek to limit or impair any obligation Reclamation may have to Applicants; rather, Plaintiff merely seeks an order that if Reclamation seeks to appropriate Plaintiff's water, it must do so lawfully.

///

For the same reasons, resolution of this case on the merits will not practically impede or impair Applicant's ability to protect their asserted interest. Fed. R. Civ. P. 24(a)(2). For example, a ruling on the merits: (1) will not impair or impede any federally reserved water right owned by either Applicant, (2) will not impede or impair either Applicants' federally protected fishing rights, (3) will not impede or impair Applicants' rights to file citizen suits under the Endangered Species Act (16 U.S.C. § 1540(g)), (4) will not change, alter, or diminish any trust obligations that exist vis-à-vis Applicants and the United States, and (5) will not diminish the broad and very express authority the United States actually does possess to use water from Lewiston Dam to protect fish populations in the lower Klamath River. *San Luis & Delta-Mendota Water Auth. v. Haugrud*, 848 F.3d 1216, 1227 (9th Cir 2017), *as corrected (Mar. 23, 2017)*. Applicants have ample means of protecting their interests and their ability to protect their interests will not be impaired or impeded by a decision on the merits.

Finally, intervention must be denied pursuant to Fed. R. Civ. P. 24(a)(2) if an applicant's interests are already adequately represented by another party to the action. Here, all of the Applicants claimed interests are held in trust for them by the United States. Consequently, the Applicants' interests are already adequately represented by an existing party to this action and their motions to intervene should be denied irrespective of any other issue.

///

///

2.      **NATURE OF PLAINTIFF'S CLAIMS**

Plaintiff Klamath Irrigation District is an irrigation district organized in 1917 in accordance with what is now ORS Chapter 545. By law, it is governed by the landowners it serves, which are largely comprised of small family farmers and ranchers. ORS 545.002; ORS 545.007; ORS 545.025; ORS 545.043. Plaintiff has approximately 53,638.3 acres of irrigated or irrigable lands within its boundaries, which are primarily used to grow high-value crops such as alfalfa, potatoes, and cereal grains.

In 1954, Plaintiff and Defendant United States Department of the Interior Bureau of Reclamation entered into Contract No. 14-06-200-3784. *Rietmann Dec*., Exhibit 11. The purpose of the contract was for Plaintiff to "take over (from the United States) the operation and maintenance of certain project works." *Id.* at Pg. 4. The works that Plaintiff is empowered to operate and maintain pursuant to the 1954 Contract include "[t]he entire Main or 'A' Canal," which is the specific structure that Plaintiff uses to divert water from UKL reservoir. *Id.* at Pg. 6. Pursuant to the 1954 contract, Plaintiff is obligated to divert and convey irrigation water fulfill water rights in KID, water rights not in KID that are served through the KID operated facilities, and to other districts and entities which in turn deliver water to water right owners within their own boundaries. All told, it is estimated that KID is responsible for fulfillment of water rights on approximately 65,000 acres of land.

As an irrigation district, Plaintiff holds property in trust for its patrons. ORS 545.253. The property Plaintiff holds in trust includes 1883, 1884, and 1905 water

rights *Rietmann Dec.,* Exhibit 2, Pgs. 42, 45, 59-73, 87, 134, 139. The 1883 water right is for "2.93 cfs of water from the Klamath River for irrigation of 12 acres within Klamath Irrigation District." *Id.* at Exhibit 2, Pg. 87. The 1884 water right is for "49.0 cfs of water from Upper Klamath Lake and the Klamath River for irrigation of 1799 acres within Klamath Irrigation District. *Id.* The 1905 water right entitles KID and others within the Klamath Project to collectively use "570,100 acre-feet of water per year from Upper Klamath Lake and the Klamath River for domestic use and irrigation of 154,955.9 acres. *Id.* at Exhibit 2, Pg. 144.

Although Plaintiff's water rights are for irrigation, domestic, and incidental use, Plaintiff and its patrons are entitled to lease any portion of their water rights instream pursuant to 445 Oregon Laws 2015 §1-2. Plaintiff is also entitled to transfer any portion of its water rights to other landowners who need water for irrigation. *Id.* Plaintiff and its patrons' "right to the use of water constitutes a vested property interest which cannot be divested without due process of law." *Skinner v. Jordan Valley Irr. Dist.,* 137 Or. 480, 491, 300 P. 499, *opinion modified on denial of rehearing,* 137 Or. 480, 3 P.2d 534 (1931). Plaintiff's "property right in the water right is separate and distinct from the property right in the reservoirs, ditches, or canals." *Nebraska v. Wyoming*, 325 US 589, 614, 65 S Ct 1332, 1349, 89 L Ed 1815 (1945).

Under the Reclamation Act of 1902, ch. 1093, 32 Stat. 388, 43 U.S.C. 371 et seq. the United States is required to comply with state law in the "control, appropriation, use, or distribution of water" unless those laws conflict with "specific," "clear," or "explicit"

congressional directives. *See, United States v. State of Cal., State Water Res. Control Bd.*, 694 F2d 1171, 1175 (9th Cir 1982). Consequently, in acquiring water for reclamation projects, the United States must "appropriate, purchase, or condemn necessary water rights in strict conformity with state law." *California v. United States*, 438 U.S. 645, 665 (1978); see also *Id.* at 668 ("Congress in the 1902 Act intended to follow state law as to appropriation of water and condemnation of water rights.").

Defendant Reclamation holds a 1905 water right in UKL reservoir obtained under the laws of the State of Oregon. Pursuant to this right, Defendant Reclamation is entitled to store a maximum annual volume of 486,828 acre-feet of water in Upper Klamath Lake "to benefit the separate irrigation rights recognized for the Klamath Reclamation Project." *Rietmann Dec.,* Exhibit 2, Pgs. 44 and 68. Defendant Reclamation also owns a water right entitling it to re-use return flows that occur *only after* water has first been used and diverted by Plaintiff. However, Defendant Reclamation has contractually granted Plaintiff the right to "use for irrigation all return flows available through the transferred works." Rietmann Dec., Exhibit 11, Pg. 29. Defendant Reclamation does not own a water right entitling Reclamation to use water in UKL reservoir for instream purposes and admits as much. (Doc. No. 26. ¶42(e)).

Although Defendant Reclamation does not have a water right entitling it to use water in UKL reservoir for instream purposes, and Plaintiff is contractually entitled and obligated to operate the Project works it uses to divert water from UKL reservoir, Defendant has purported to cap the maximum amount of water that Plaintiff and other

irrigators within the Klamath Project are entitled to under their water rights to 350,000 acre-feet. *Rietmann Dec.,* Exhibit 4, Pg. 27 ("The maximum Project Supply under the Proposed Action Alternative is 350,000 AF). Defendant has also determined that it will use a *minimum* of 400,000 acre-feet of water in UKL reservoir each year for instream purposes, despite the fact that it does not have a water right authorizing the use. *Rietmann Dec.,* Exhibit 4, Pg. 55 ("Under the Proposed Action Alternative, the minimum EWA is 400,000.)

In this action for declaratory and injunctive relief, Plaintiff is fundamentally asking this Court to declare that Defendants (collectively "the United States) are:

(1) unlawfully using water in Upper Klamath Lake ("UKL") reservoir without a water right in violation of Oregon law and §8 of the Reclamation Act;

(2) unlawfully interfering with and/or condemning water rights that Plaintiff holds in UKL reservoir without judicial process in violation of the §7 and 8 of the Reclamation Act;

(3) unlawfully exercising control over irrigation works that Plaintiff is entitled to operate and maintain under its contract with Reclamation by capping the amount of water Plaintiff may beneficially use; and

(4) violating the civil rights of Plaintiff and its landowners by depriving them of their property interests in their water rights without notice and meaningful opportunity to be heard in violation of the Fifth Amendment to the United States Constitution.

The relief Plaintiff is seeking consists of an injunction that prohibits the United States from *unlawfully* using water in UKL reservoir for instream purposes. Plaintiff is not seeking to prevent the United States from *lawfully* using water in UKL reservoir, or other sources, for instream purposes. (Doc. No. 4, Pgs. 15-22).

There are numerous ways in which the United States may lawfully obtain the right to use water in UKL reservoir for instream purposes. Options include, but are not limited to: (1) leasing water rights that Plaintiff or others hold in UKL reservoir in accordance with 445 Oregon Laws 2015 §1-2, (2) purchasing water rights that Plaintiff or others own in UKL reservoir in accordance with §7 of the Reclamation Act and thereafter leasing the water rights instream pursuant to 445 Oregon Laws 2015 §1-2, (3) condemning water rights from Plaintiff or others hold in UKL reservoir under judicial process as provided in §7 of the Reclamation Act and converting them to instream use as provided in 445 Oregon Laws 2015 §1-2, (4) obtaining a stay of the ACFFOD in the Klamath Adjudication pursuant to ORS 540.180, (5) obtaining limited licenses to use water in UKL reservoir for instream purposes pursuant to ORS 537.143 (as Reclamation did in 2014 and 2015), or (6) obtaining water for instream purposes from other sources through similar means (e.g., Clear Lake, Gerber Lake, Howard Prairie Lake, Trinity River, Shasta River, Scott River, Salmon River). *See, Rietmann Dec.,* Exhibits 6 through 9.

Plaintiff recognizes that if the Court agrees with Plaintiff on the merits of this case, Defendants are not going to be able to instantaneously secure water rights enabling them to lawfully use water in UKL reservoir for instream purposes. For this reason, Plaintiff's claims for relief are specifically tailored so as to ensure the ruling in this case does not cause any harm to threatened or endangered species. Specifically, Plaintiff's Amended Complaint seeks to ensure that if injunctive relief is issued, the United States will be afforded a reasonable period of time to bring itself into legal compliance, before

the restraints of the injunction go into effect. In this regard, Plaintiff's Amended

Complaint *repeatedly* states:

> KID asks that the restraints of the injunction not go into effect until
> April 1, 2020[1] so as to afford Defendants a reasonable period to
> secure the right to use water from UKL reservoir for instream
> purposes in accordance with Oregon law, as required by Section 8 of
> the Federal Reclamation Act, without causing any harm to
> endangered or protected species during the period in which
> Defendants are bringing themselves into legal compliance.
> (Doc. No. 4, Pgs. 15-22).

In summary, this case is not about what the United States is doing, but how the

United States is doing it. Plaintiff is not seeking to prevent the United States from

*lawfully* providing instream flows below Iron Gate Dam in furtherance of any of its legal

obligations or interests. Plaintiff is seeking to prevent the United States from fulfilling

whatever legal obligations it has by *unlawfully* providing instream flows below Iron Gate

Dam with water that Plaintiff is entitled to under its water rights without judicial process,

without compensation, and without notice and meaningful opportunity to be heard before

an unbiased decisionmaker as the 5th Amendment requires.

## 3.    NATURE OF APPLICANTS' INTERESTS

An accurate understanding of Applicants' interests in this matter necessarily

requires an understanding of Oregon's 1909 Water Rights Act and the Klamath Basin

adjudication process being conducted pursuant thereto.

///

---

[1] Naturally, Plaintiff did not know the briefing schedule in this case when it submitted its
pleading. Obviously, if this case is not decided on the merits until February or March (or later),
the effective date of the injunction should be extended to a later date.

*A.    1909 Oregon Water Rights Act*

"In the nineteenth century, water rights in Oregon were acquired by appropriation or riparian right, or accrued to the United States and Indian Tribes under federal law as federal reserved rights." *United States v. State of Or.*, 44 F.3d 758, 763 (9th Cir 1994).

"As was traditional in Western states, the relative rights of various claimants to water from a river system were determined piecemeal, as conflicts arose, in traditional lawsuits in equity." *Id.* In these lawsuits, the doctrine of prior appropriation was generally applied to resolve the disputes.

Under the doctrine of prior appropriation, water rights are obtained on a "first come, first served basis by diverting water and applying it to a beneficial use. *Teel Irr. Dist. v. Water Res. Dep't of State of Or.*, 323 Or 663, 667, 919 P2d 1172, 1174 (1996); *see also, Montana v. Wyoming*, 563 US 368, 375, 131 S Ct 1765, 1772, 179 L Ed 2d 799 (2011). Pursuant to this first-in-time, first-in-right system, the right to use water belongs to the first person to put it to beneficial use. *Montana v. Wyoming*, 563 U.S. at 376. As new users come to the same water source, they are considered "junior" to the prior, "senior" appropriators. *Id.* During times of shortage, a senior user is authorized to limit the use of water by junior users to allow full satisfaction of the senior water right. *Id.*

With time, Oregon's population increased and so did the volume of water right conflicts. "As the interrelation of water rights became more apparent, a dilemma emerged: the nature of traditional civil litigation made joinder of the hundreds or thousands of claimants to a river system extremely cumbersome and inefficient, while

less comprehensive adjudications were of little value." *United States v. State of Or.*, 44 F.3d 758, 763 (9th Cir 1994).

On February 24, 1909, the State of Oregon sought to address the foregoing dilemma by adopting the 1909 Water Rights Act to establish comprehensive regulatory system for water. *Fort Vannoy Irr. Dist. v. Water Res. Comm'n*, 188 P.3d 277, 293 (Or. 2008); 1909 Oregon Laws Chapter 216. As further explained below, the Water Rights Act: (1) created a new forward looking permit system for the establishment and regulation of post-1909 water rights, (2) created comprehensive adjudication process to look backward and quantify all pre-1909 water rights, and (3) used the doctrine of prior appropriation as the glue that would enable these two separate systems to eventually be brought together and regulatorily integrated.

### i.    Water Right Act created permit system for new water rights

Following the enactment of the Water Rights Act in 1909, new water rights could only be obtained through the issuance of a permit from the state. *See,* ORS 537.120, ORS 540.720 ("*No person shall use without authorization water to which another is entitled, or willfully waste water to the detriment of another. The possession or use of such water without legal right shall be prima facie evidence of the guilt of the person using it.*"). This meant that on a forward-looking basis, the characteristics of all post-1909 water rights (e.g., priority date, place of use, type of use, rate, duty) would be determined and documented at the time the rights were established. Having the priority date and other characteristics of all new water rights determined and recorded with the state on the front

end enables water rights disputes involving post-1909 water rights to be efficiently resolved in accordance with the doctrine of prior appropriation.

      ii.    *Water Right Act created general stream adjudication process for determining pre-1909 water rights.*

The Water Rights Act recognized all water rights established prior to 1909 as "undetermined vested rights" and created a general stream adjudication process through which all such rights could be comprehensively quantified and determined. ORS 536.007(11). Oregon's adjudication process is set forth in ORS Chapter 539. The mechanics of that process have been described by the Ninth Circuit as follows:

> Upon petition by a claimant, or on its own initiative, the Oregon water Resources Department [OWRD] may commence the adjudication of the rights of all claimants to a river or stream. [Or. Rev. Stat.] § 539.021. Notice must be given to all interested parties. *Id.* at §§ 539.030, 539.040(2). Those claimants who have already been issued water certificates through the permit system are not required to participate in the adjudication in order to preserve their rights as already determined. *Id.* at § 539.100. However, those with undetermined claims to the water of the system are required to appear and submit proof of their claims before the OWRD. The OWRD accepts claims and objections to claims, surveys the river system, takes evidence and holds hearings regarding contested claims. *Id.* at §§ 539.070, 539.100, 539.110, 539.120. After these hearings, the OWRD makes findings of fact and an order determining the parties' water rights. *Id.* at § 539.130. This order is effective upon issuance unless a party wishes to contest the order and files a bond. *Id.* at § 539.130(4). After the order is filed, a judicial hearing is scheduled and notice of that hearing is given to the participants. *Id.* at § 539.130. Parties objecting to the department's order must file written exceptions with the court in order to preserve their objections. *Id.* at § 539.150. If no objections are filed, the court must enter a judgment affirming the order. *Id.* at § 539.150(3). . . . This judgment is appealable to the Oregon Court of Appeals in the same manner as any other civil judgment. *Id.* [at § 539.150(4)].

Once pre-1909 water rights on a stream or basin are comprehensively determined through the adjudication process, they may then be integrated with post-1909 water rights and regulated in accordance with the doctrine of prior appropriation as part of a unified system. In such manner, the Water Rights Act accomplishes the goal of ensuring all water rights are comprehensively determined so that water rights disputes thereafter arising may be efficiently resolved.

      B.     *Oregon's general stream adjudication process is comprehensive and encompasses all federal reserved water rights of the United States and Indian Tribes*

The United States Supreme Court has recognized that the purpose of Oregon's general stream adjudication process is to obtain "a complete ascertainment of **all existing rights**…" established prior to 1909. *Pac. Live Stock Co. v. Lewis*, 241 US 440, 447–48, 36 S Ct 637, 641, 60 L Ed 1084 (1916). The comprehensiveness of Oregon's general stream adjudication process is ensured in two primary ways.

First, the United States Supreme Court has recognized that in Oregon's adjudication process, "[a]ll claimants are required to appear and prove their claims; no one can refuse without forfeiting his claim, and all have the same relation to the proceeding." *Pac. Live Stock Co. v. Lewis*, 241 US 440, 447–48. In this regard, ORS 539.210 specifically states:

> Any claimant who fails to appear in the proceedings and submit proof of the claims of the claimant shall be barred and estopped from subsequently asserting any rights theretofore acquired upon the stream or other body of water embraced in the proceedings, and shall

be held to have forfeited all rights to the use of the water theretofore claimed by the claimant.

Second, Oregon's adjudication process encompasses all federal reserved water rights that may be claimed by the United States or Indian tribes. In this regard, ORS 539.010(7) states:

> In any proceeding to adjudicate water rights under this chapter, the Water Resources Department may adjudicate federal reserved rights for the water necessary to fulfill the primary purpose of the reservation or any federal water right not acquired under ORS chapter 537 or ORS 540.510 to 540.530.

Oregon's power to adjudicate federal reserved water rights of the United States and Indian tribes is derived from Congress' 1952 enactment of the McCarran Amendment (43 U.S.C. §666). The McCarran Amendments waives the sovereign immunity of the United States in (1) general stream water rights adjudications, *and* (2) suits for the administration of such water rights. The McCarran Amendment states in relevant part as follows:

> Consent is given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such rights, where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit. The United States, when a party to any such suit, shall (1) be deemed to have waived any right to plead that the State laws are inapplicable or that the United States is not amenable thereto by reason of its sovereignty, and (2) shall be subject to the judgments, orders, and decrees of the court having jurisdiction, and may obtain review thereof, in the same manner and to the same extent as a private individual under like circumstances: *Provided,* That no judgment for costs shall be entered against the United States in any such suit.

The U.S. Supreme Court has recognized that the McCarran Amendment's sovereign immunity waiver "may, in the appropriate case, require the United States to adjudicate its water rights in state forums." *Cappaert v. U. S.*, 426 US 128, 146, 96 S Ct 2062, 2073, 48 L Ed 2d 523 (1976). The U.S. Supreme Court has also recognized that the McCarran Amendment's sovereign immunity waiver extends to the federal reserved rights of Indian Tribes, as well as other federal reserved water rights of the United States. *Arizona v. San Carlos Apache Tribe,* 463 U.S. 545, 103 S.Ct. 3201, 77 L.Ed.2d 837 (1983). As the Ninth Circuit plainly stated in one case involving a contention that the McCarran Amendment's sovereign immunity waiver did not extend to federal reserved water rights of Indian Tribes:

> As it has on numerous occasions in the past, the Tribe here again sought a ruling that Arizona courts had no jurisdiction to adjudicate the Tribe's water rights in W–1. The Tribe persists in misconstruing the McCarran Amendment and the decisions applying it. We find it difficult to respond to the Tribe's contentions at this late date other than to state flatly that the Tribe is wrong. The state court does have the authority to adjudicate tribal water rights in W–1. The Congress has said so, *see* McCarran Amendment, 43 U.S.C. § 666; the United States Supreme Court has said so, *see Arizona v. San Carlos Apache Tribe,* 463 U.S. 545, 103 S.Ct. 3201, 77 L.Ed.2d 837 (1983); *Colorado Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); the Arizona Supreme Court has said so, *see United States v. Superior Court in and for Maricopa County;* 144 Ariz. 265, 697 P.2d 658 (1985); and we have said so, *see Northern Cheyenne Tribe v. Adsit,* 721 F.2d 1187 (9th Cir.1983). It is time that the Tribe accept the proposition as true.
>
> *White Mountain Apache Tribe v. Hodel*, 784 F2d 921, 924 (9th Cir 1986).

//

C.    *Klamath Basin General Stream Adjudication comprehensively determines all pre-1909 water rights in UKL reservoir, including federal reserved water rights of United States and Applicants*

"In 1975, the Oregon Water Resources Department (OWRD) invoked Oregon's statutory procedure for the mass adjudication of water rights in order to determine all claims to surface water in the Klamath River Basin." *United States v. State of Or.*, 44 F.3d 758, 762 (9th Cir 1994). At that time, the "state notified over 25,000 potential claimants." *Id.* Multiple additional notices of the adjudication and the need to file a claim were mailed and published over the course of the ensuing decades. The notices consistently stated that failing to file a claim in the adjudication would forfeit any right that might otherwise exist. *Rietmann Dec.,* Exhibit 5, Pg. 2

The Klamath Adjudication was delayed for many years due to litigation concerning how the federal reserved water rights of the Klamath Tribes should be quantified. *United States v. Adair*, 723 F2d 1394, 1398 (9th Cir 1983). It was also delayed due to litigation concerning whether the State of Oregon had authority under the McCarran Amendment to adjudicated the water rights of the United States and Klamath Tribes. Eventually, in *U.S. v. Oregon*, the Ninth Circuit confirmed the State of Oregon maintains authority under the McCarran Amendment to adjudicate the federal reserved water rights of the United States and tribes. *United States v. State of Or.*, 44 F.3d 758, 770 (9th Cir 1994) ("We hold that the Klamath Basin adjudication is in fact the sort of adjudication Congress meant to require the United States to participate in when it passed

the McCarran Amendment. Accordingly, federal sovereign immunity imposes no bar to the United States participation in that process.")

> i.    *Distribution of water pending completion of Final Order of Determination*

Once the State of Oregon's authority to adjudicated federal reserved water rights was determined in *U.S. v. Oregon,* questions arose as to whether or how water was to be regulated pending the outcome of the Klamath Adjudication. On this question, the State of Oregon and the United States held fundamentally different positions. The State of Oregon's position was that:

> While the state has the authority under the McCarran Amendment to both adjudicate and then administer, i.e., regulate between, water rights, it is less clear how water must be managed completion of the adjudication. Oregon has taken the position that it regulates neither in favor of nor against unadjudicated water rights. Accord *Rettkowski v. Department of Ecology,* 858 P.2d 232 (Wash. 1993); *South Delta Water Agency v. U.S., Dept. of Int.* 767 F. 2d 531 (1985) (quantification of federal water rights must occur before authority to administer those rights conferred under McCarran Amendment."

> *Rietmann Dec.,* Exhibit 10, Pg. 5.

Meanwhile, the United States took the position that it had an obligation to "use its best efforts to operate the Project consistent with existing water rights." *Rietmann Dec.,* Exhibit 12, Pg. 5. While the United States acknowledged that the precise nature of the existing rights relating to the Project were not known with certainty because they had not been adjudicated, it nevertheless asserted that these existing rights could be "reasonably estimated" and that the government had a duty to ensure the Project was "operated based on the best available information." *Id.* at 6.

The State of Oregon did not agree that the United States' positions concerning the distribution of water pending the final order of determination in the Klamath Adjudication. *Rietmann Dec.,* Exhibit 10, Pg. 5-11. Nevertheless, Defendant Reclamation developed operations plans throughout the 1990's and 2000's in which it purported to "exercise its authority to manage the project consistent with all of its obligations, including senior Indian water rights, contractual obligations and ESA requirements." *Rietmann Dec.,* Exhibit 12, Pg. 7. In developing these plans, Defendant Reclamation consistently acknowledged that "[u]pon completion of the adjudication and pursuant to section 8 of the Reclamation Act of 1902, the Project will be operated in accordance with the outcome of the adjudication, as well as with other applicable requirements, and the operations plan will be revised as appropriate." *Id.* at 2 (emphasis added). Similarly, the 2013 Biological Opinion for the Klamath Project explicitly stated:

> The potential effects of the Findings of Fact and Order of Determination on management of water in the Klamath Basin, including Reclamation's Project operations, are uncertain at present…In the future, when the consequences of the adjudication are understood, the proposed action will be modified if necessary in accordance with parties' legal rights to beneficial use of water."

> *See,* https://www.usbr.gov/mp/kbao/programs/docs/klamath-project-biological-opinion.pdf (page 4)

> ii.    *Distribution of water following issuance of Final Order of Determination*

On March 6, 2013, thirty-eight (38) years after the State of Oregon initiated the Klamath Adjudication, the State of Oregon entered its Findings of Fact and Final Order of Determination in the Klamath Adjudication with the Klamath County Circuit Court.

Subsequently, on February 28, 2014, the State of Oregon entered an Amended and Corrected Findings of Fact and Final Order of Determination ("ACFFOD") with the Klamath County Circuit Court.[2] *Rietmann Dec.,* Exhibit 1. Once the ACFFOD was entered, the water rights comprehensively determined therein became fully enforceable, pursuant to ORS 537.130(4), ORS 539.170. The United States Supreme Court has specifically recognized that "**it is within the power of the [State of Oregon] to require that, pending the final adjudication, the water shall be distributed according to the board order [i.e. Final Order of Determination], unless a suitable bond be given to stay its operation.**" *Pac. Live Stock Co. v. Lewis*, 241 US 440, 447–48 (1916). In this regard, ORS 537.130 provides:

> The determination of the department shall be in full force and effect from the date of its entry in the records of the department, unless and until its operation shall be stayed by a stay bond as provided by ORS 539.180.

Likewise, ORS 537.170 provides:

> While the hearing of the order of the Water Resources Director is pending in the circuit court, and until a certified copy of the judgment, order or decree of the court is transmitted to the director, the division of water from the stream involved in the appeal shall be made in accordance with the order of the director.

The relative water rights of Plaintiff and Defendant, and all others having pre-1909 water rights in UKL, are comprehensively set forth in the ACFFOD. With respect to the relative water rights of Plaintiff and Defendant, the ACFFOD specifically states that

---

[2]https://www.oregon.gov/OWRD/programs/WaterRights/Adjudications/KlamathRiverBasinAdj/Pages/default.aspx

the purposes for which water stored in UKL reservoir may be used are expressly limited

to those set forth in the ACFFOD. In this regard, the ACCFOD specifically states:

> The permissible purposes of use for the water rights arising under the May 19, 1905 Notice are defined by several principles. First, under ORS 539.210 and OAR 690-030-0085, **the purposes of use that may be recognized are limited to those which have been properly claimed**.

> *Rietmann Dec.,* Exhibit 2, Pg. 41-42.

The ACFFOD then proceeds to determine that:

> A. "The United States is the owner of a right to store water in Upper Klamath Lake to benefit the separate irrigation rights for the Klamath Reclamation Project." *Rietmann Dec.,* Exhibit 2, Pg. 68.

> B. "Beneficial users within the Klamath Project hold a 1905 water right to beneficially use the water that the United States stores in Upper Klamath Lake reservoir for "irrigation, domestic and incidental stock watering uses." *Rietmann Dec.,* Exhibit 2, Pg. 42 and 45. In this regard, the ACFFOD specifically recognizes that Plaintiff Klamath Irrigation District, and other irrigation districts within the Klamath Project "represent the beneficial users' interests with respect to the beneficial use component of the water rights recognized in [the ACFFOD]." *Rietmann Dec.,* Exhibit 2, Pg. 29, 66.

With respect to the federal reserved water rights of the Klamath Tribes in UKL

reservoir, the ACFFOD recognizes the United States as having a water right in UKL

reservoir that is held in trust for the Klamath Tribes. *Rietmann Dec.,* Exhibit 3, Pg. 10.

The express purpose or use of the water right is to provide "minimum lake levels in

Upper Klamath Lake to establish and maintain a healthy and productive habitat to

preserve and protect the tribes' hunting, fishing, trapping and gathering rights on former

reservation land." *Id.* at Pg. 11. The priority date of the water right is "time immemorial."

However, the water right the United States holds in trust for the Klamath Tribes also specifically provides that the water right "shall not result in regulation curtailing use of water under any water rights having a priority date before August 9, 1908." *Id.* at Pg. 8. Thus, the water right in UKL reservoir that the United States holds in trust for the tribes is expressly subordinate to the 1905 water rights of Plaintiff and cannot, by its terms, interfere with the exercise of Plaintiff's water rights in UKL reservoir.

Meanwhile, the Hoopa Valley Tribe does not have a federal reserved water right in UKL reservoir. During the thirty-nine (39) years that elapsed between the date the Klamath Adjudication was commenced in 1975, and the date the ACFFOD was entered in 2014, the Hoopa Valley Tribe never claimed a water right in UKL reservoir, or in any waters of the Klamath River encompassed within the scope of the Klamath Adjudication. Additionally, the Hoopa Valley Tribe has never contested Plaintiff or anyone else's water right claims in UKL reservoir, or the Klamath River. This is true notwithstanding the fact that:

> (1) the authority of the United States to adjudicate the federal reserved water rights of the United States and Indian Tribes in the Klamath Adjudication has been judicially confirmed by the Ninth Circuit, in *United States v. State of Or.*, 44 F.3d 758, 764 (9th Cir 1994), and

> (2) the United States Supreme Court has held that in Oregon's adjudication process, "[a]ll claimants are required to appear and prove their claims; no one can refuse without forfeiting his claim, and all have the same relation to the proceeding." *Pac. Live Stock Co. v. Lewis*, 241 US 440, 447–48, 36 S Ct 637, 641, 60 L Ed 1084 (1916).

The United States "admits that the rights administratively determined by the FFOD and ACFFOD are legally enforceable under Oregon law." (Doc. No. 26., ¶40). In

fact, since the ACFFOD was entered in 2014, the United States has repeatedly sought to enforce rights set forth in the ACFFOD against others. For example, the United States has repeatedly enforced the water rights that it holds in trust for the Klamath Tribes under the ACFFOD by asking the Oregon Water Resource Department to curtail water use of irrigators in the Upper Klamath Basin (north of the Klamath Project). *See, e.g.,* https://www.opb.org/news/article/klamath-tribes-call-in-their-water-rights/. Also, in 2014 and 2015, the United States obtain limited licenses legally authorizing the United States to use more than 200,000 acre-feet of water stored in UKL reservoir for instream purposes during each of those two years. *Rietmann Dec.,* Exhibit 5 through 9. The United States would not have applied for limited licenses from the State of Oregon in 2014 and 2015 requesting the right to use 200,000 acre-feet of water stored in UKL reservoir for instream purposes if it already had the legal right to use water for such purposes. Thus, the applications for limited licenses in 2014 and 2015 are an implicit admission that the United States is very much aware it does not have legal authority to use water in UKL reservoir for instream purposes. However, since 2015, the United States has proceeded to use hundreds of thousands of acre-feet of water in UKL reservoir for instream purposes, without obtaining a limited license or any other form of water right legally entitling it to use water for such purpose. *See e.g., Rietmann Dec.,* Exhibit 4, Pg. 25.

## 4.    PROCEDURAL BACKGROUND

The operative pleading in this matter, the First Amended Complaint ("FAC") was filed by Plaintiff on April 5, 2019.   (Doc. No. 4.)   The Parties agreed to a briefing

schedule and to consolidate a related action filed by Klamath Water Users Association, *et al.*, Case. No. 1:19-cv-00531-CL into this action.  (Doc. No. 16.)  The Applicants filed their Motion to Intervene on August 8, 2019 and August 16, 2019 respectively.  (Doc. No. 21 and 29.) The Tribe and the Parties agreed via stipulation to a briefing schedule. (Doc. No. 32 and 38.)

## 5.    STATEMENT OF LAW

"On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."   Fed. R. Civ. P. 24(a).   The test for whether a proposed intervenor may intervene as a matter of right is well-established, and contains four criteria:   (1) "the application for intervention must be timely"; (2) "the applicant must have a 'significantly protectable' interest relating to the property or transaction that is the subject of the action"; (3) "the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest"; and (4) "the applicant's interest must not be adequately represented by the existing parties in the lawsuit."  *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001) (quoting *Nw. Forest Resource Council v. Glickman*, 82 F.3d 825, 836 (9th Cir. 1996)).

The proposed intervenor bears the burden of establishing that each of the requirements for intervention is met.  *See Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir.

2006); *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004). The failure to establish any one element is met warrants the denial of the proposed intervenor's application for intervention as of right under Rule 24(a). *See Alisal Water Corp.*, 370 F.3d at 919 ("The party seeking to intervene bears the burden of showing that *all* the requirements for intervention have been met."); *see also Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) ("[A]n applicant seeking to intervene has the burden to show that these four elements are met.").

6.    **ARGUMENT**

A.    *This Court Should Not Apply a Liberal Standard to Intervention*

The normal rule is that intervention under Rule 24 should be construed "broadly in favor of proposed intervenors," because "[a] liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (quoting *United States v. City of Los Angeles*, 288 F.3d 391, 397–98 (9th Cir. 2002)). "By allowing parties with a practical interest in the outcome of a particular case to intervene, we often prevent or simplify future litigation involving related issues; at the same time, we allow an additional interested party to express its views before the court." *City of Los Angeles*, 288 F.3d at 398 (quoting *Forest Conserv. Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1496 n.8 (9th Cir. 1995)).

However, it is not the Applicants' goal to broaden access to the courts. The Applicants have sought to intervene solely for the purpose of arguing that they are an

indispensable party that will not waive sovereign immunity, and that therefore the case must be dismissed. The Applicants actually seek to limit both access to the Courts and Plaintiff's ability to reach the merits of its claims, thereby undermining "efficient resolution of issues and broadened access to the courts," *Wilderness Soc'y*, 620 F.3d at 1179, by seeking to prevent Plaintiff from litigating its claim on the merits. *See, e.g.*, *United States v. Newman*, 441 F.2d 165, 170–73 (5th Cir. 1971) (denying both permissive and mandatory intervention in a tax protester lawsuit to avoid permitting proposed intervenors from disrupting the investigatory process); *Dave Drilling Env. Eng'g, Inc. v. Gamblin*, No. 14–cv–02851–WHO, 2015 WL 4051968, at *3 (N.D. Cal. July 2, 2015) (noting insurers are frequently not allowed to intervene as of right when they have reserved the right to deny coverage, because allowing them to intervene might allow the insurer "to interfere with and in effect control the defense"); *Dubeau v. Sterling Sav. Bank*, No. 1:12–cv–01602–CL, 2013 WL 4591034, at *5 (D. Or. Aug. 28, 2013) (noting, in context of timeliness inquiry for attempts to intervene in class action settlements, that courts will deny motions to intervene when alternative courses of action exist "that would be less disruptive to the proceedings").

The Applicants have no interest in litigating this case and made clear they simply seek to stop it in its tracks. This does not serve the purpose of broadening access to the courts. Rather, it is a facial attempt to restrict access to the courts. Moreover, if the tangential interests identified are sufficient to permit intervention *as a matter of right* only to seek the case's dismissal, it is hard to imagine how Plaintiff would ever be able to

protect its water rights, contractual rights, rights under the APA, and rights protected under the 5th Amendment to the United States Constitution from being trampled by Defendant Reclamation.

      B.    *No Significantly Protectable Interest of the Applicants is Implicated in the Litigation*

"The requirement of a significantly protectable interest is generally satisfied when 'the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue.'" *Arakaki v. Cayetano*, 324 F.3d 1078, 1084 (9th Cir. 2003) (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1484 (9th Cir. 1993)). The applicant must satisfy both elements, and "generally satisfies the 'relationship' requirement only if the resolution of the plaintiff's claims actually will affect the applicant." *Donnelly v. Glickman*, 159 F.3d 405, 410 (9th Cir. 1998). "[W]hether an applicant for intervention demonstrates sufficient interest in an action is a practical, threshold inquiry. No specific legal or equitable interest need be established." *Sw. Ctr. for Bio. Diversity*, 268 F.3d at 818 (quoting *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993)).

An Applicant may not advance simply any right in order to intervene. The right must be "direct, non-contingent, substantial and legally protectable, and one not adequately represented by existing parties." *Dilks v. Aloha Airline*, 642 F.2d 1155, 1157 (9th Cir. 1981) (internal citations omitted). Concerns about how a ruling could impact a separate, future determination are insufficient to establish a significantly protectable interest. *See Greene v. United States*, 996 F.2d 973, 976–78 (9th Cir. 1993) (no

significantly protectable interest for one Tribe intervening in a suit concerning another Tribe's efforts to establish federal recognition, even though this recognition might be a prelude to a direct challenge to the distribution of fishing rights).

　　　　　　　　　i.　　*Hoopa Valley Tribe*

Applicant Hoopa Valley Tribes asserts that it has "federal reserved fishing and water rights that are protected under federal law." (Doc. No. 21 at 26.) The Hoopa Valley Tribes states that Plaintiff's claims relate "to the finite resource of waters of the Klamath River," and that these rights "compete with and are mutually exclusive to the Tribe's senior water rights and fishing rights." (*Id.*) Finally, the Tribe mischaracterizes the relief Plaintiff seeks as "prohibit[ing] Reclamation from releasing water for fish downstream of the Klamath Project." (*Id.* at 27.)

The Hoopa Valley Tribe's argument suffers from several fundamental flaws. First, the Tribe inaccurately characterizes the relief Plaintiff seeks, and sidesteps the fact that this case is about *water rights* in UKL reservoir, the relative rights of Plaintiff and Reclamation under certain contracts, and the 5th Amendment procedural due process rights of Plaintiff and its patrons. The Hoopa Valley Tribe has never claimed, and does not have, federal reserved water rights in UKL reservoir. *Supra,* Pg. 20. The Hoopa Valley Tribe is not a third-party beneficiary of the contracts between Plaintiff and Reclamation concerning the operation and maintenance of certain irrigation works. *See e.g., Klamath Water Users Protective Ass'n v. Patterson*, 204 F3d 1206, 1212 (9th Cir 1999), *opinion amended on denial of reh'g,* 203 F3d 1175 (9th Cir 2000); compare

*Rietmann Dec.,* Exhibit 11. The Hoopa Valley Tribe does not have an interest in the procedural due process rights of Plaintiff and its patrons under the 5th Amendment to the United States Constitution. Even if the Hoopa Valley Tribe did have water rights in UKL reservoir that were senior to Plaintiff's (and it doesn't), these rights would not be impacted by virtue of their seniority. This action only concerns the water rights (or lack thereof) of Plaintiff and Defendant. This action does not limit, impair, or affect the ability of the Hoopa Valley Tribe, or anyone else, to exercise or enforce senior water rights.

Furthermore, Plaintiff *does not* seek to prevent the *lawful* flow of water downstream, including flows the United States feels are necessary to provide for the Hoopa Valley Tribe. Instead, Plaintiff seeks to prevent Defendants from unlawfully misappropriating water that Plaintiff's hold water rights to for their own purposes without following federal and state law.  (*See* Doc. No. 4 at ¶¶ 52, 57, 67, 69, 71, 74–79.) Plaintiff does not request that this Court order Defendants to cease the lawful flow of water down the Klamath River:  Plaintiff simply asks the Court prevent Defendants from "interfering with or divesting KID and its landowners of their water rights *in a manner not permitted under the law*."  (*Id.* at 22 [emphasis added].)

To the extent that Defendants believe that certain amounts of instream flows are required to meet any obligations they may owe to the Hoopa Valley Tribe, there are numerous ways in which the Defendants can discharge their duties lawfully. Defendants can lease water rights that Plaintiff or others hold in UKL reservoir in accordance with 445 Oregon Laws 2015 §1-2. Defendants can purchase water rights that Plaintiff or

others hold in UKL reservoir in accordance with §7 of the Reclamation Act and thereafter leasing the water rights instream pursuant to 445 Oregon Laws 2015 §1-2. Defendants can condemn water rights that Plaintiff or others hold in UKL reservoir under judicial process as provided in §7 of the Reclamation Act and convert them to instream use as provided in 445 Oregon Laws 2015 §1-2(4). Defendants can obtain a stay of the ACFFOD in the Klamath Adjudication pursuant to ORS 540.180. Defendants can obtain limited licenses to use water in UKL reservoir for instream purposes pursuant to ORS 537.143 (as Reclamation actually did in 2014 and 2015). Defendants can obtain water for instream purposes from other sources (e.g., Clear Lake, Gerber Lake, Howard Prairie Lake, Trinity River, Shasta River, Scott River, Salmon River). Defendants can exercise very express legal authority they actual do possess to release water from Lewiston Dam to protect fish populations in the lower Klamath River. *San Luis & Delta-Mendota Water Auth. v. Haugrud*, 848 F.3d 1216, 1227 (9th Cir 2017), *as corrected (Mar. 23, 2017)*. These are all ways in which Defendants may lawfully provide water, if needed, to satisfy requests for water from the Hoopa Valley Tribe. The Hoopa Valley Tribe has made no effort to show that these lawful avenues are unavailable to Reclamation, and that an order requiring it to comply with the Reclamation Act will necessarily require it to violate any obligations it may have to the Hoopa Valley Tribe.

Relatedly, the Hoopa Valley Tribe has not explained why it has a protectable interest in litigation that primarily concerns the *means by which* Reclamation acquires instream water rights.  Again, Plaintiff does not seek to prevent Reclamation from

acquiring water rights if it so chooses.  The Secretary of the Interior has the right to condemn water rights, if necessary.  *See* 43 U.S.C. §§ 373, 421 ["Where, in carrying out the provisions of this Act, it becomes necessary to acquire any rights or property, the Secretary of the Interior is authorized to acquire the same for the United States by purchase or by condemnation under judicial process."); *Ivanhoe Irr. Dist. v. McCracken*, 357 U.S. 275, 291 (1958) *overruled on other grounds California v. U. S.*, 438 US 645, 674, (1978) ((holding that Section 8 of the Reclamation Act "requires the United States to comply with state law when, in the construction and operation of a reclamation project, it becomes necessary for it to acquire water rights"). The only requirement is that the Secretary must abide by state law in doing so. 43 U.S.C. §§ 383, 661; *Ivanhoe Irr. Dist.*, 357 U.S. at 291; *United States v. 71.22 Acres of Land, More or Less Situated in Utah Cty., State of Utah*, 665 F Supp 885, 888 (D Utah 1987).

It is undisputed that Applicant Hoopa Valley Tribe has federally protected fishing rights approximately 200 miles south of the Klamath Project. However, in this action, Plaintiff does not seek relief that would alter, change, or diminish the Hoopa Valley Tribes' federally protected fishing rights, which consist of the right "to harvest a sufficient share of the resources to sustain a modest standard of living," meaning "fifty percent of the harvest in any given year unless varied by agreement of the parties." (Doc. No. 24-1, Pg. 4). But even if this were not so, it is clear under the ACFFOD that the Hoopa Valley Tribe does not have a federally reserved water right in UKL reservoir by virtue of its federally protected fishing rights. And even if the Hoopa Valley Tribe did

hold senior federal reserved water rights in UKL reservoir (and it doesn't), these rights would not be affected by virtue of their seniority and the nature of Plaintiff's claims.

Thus, in order for Applicant's fishing rights to be impacted, several intervening circumstances must occur. First, there must be insufficient water in the Klamath River in a given year for the Plaintiff to exercise its water rights and the Hoopa Valley Tribe to exercise its fishing rights. Second, Defendants in this action must refuse to lawfully acquire or provide water from UKL reservoir to satisfy the Hoopa Valley Tribe's needs through all of the myriad avenues available to it. Third, Defendants in this action must refuse to lawfully acquire or provide water from other sources to satisfy the Hoopa Valley Tribe's needs, through all the available options open to it. Fourth, Defendants in this action must fail to seek or obtain a stay of the ACFFOD in the Klamath Adjudication. Fifth, Defendants in this action must refuse to exercise legal authority it possesses to release water from Lewiston Dam to protect fish populations in the lower Klamath River. *San Luis & Delta-Mendota Water Auth. v. Haugrud*, 848 F.3d 1216, 1227 (9th Cir 2017), *as corrected (Mar. 23, 2017)*. Then, and only then, would an adverse ruling in this case have any impact on the Tribe's federally reserved fishing rights. Such an interest is far too speculative to warrant mandatory intervention in this case, especially where the Tribe simply seeks to prevent this Court from reaching the merits of Plaintiff's claims. *See Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*, 276 F.3d 1150, 1155 n.5 (9th Cir. 2002) ("A claimed interest must be more than speculation about future events."); *Tyson v. Nationstar Mortg. LLC*, No. 15-cv-01548-BLF, 2016 WL 39903, at

*3 (N.D. Cal. Jan. 4, 2016) (finding that concerns about impact on credit report in the event of a foreclosure were speculative, and therefor party was not necessary).

        *ii.*     *Klamath Tribes*

The Klamath Tribes asserted interests are similarly unrelated to the actual subject matter of this action. The Applicant Klamath Tribes assert they have "interests in the fish and water of the Klamath Basin," including a federally protected right to fish and associated federal reserved water rights that have been determined in the Klamath Adjudication. (Doc. No. 29, Pg. 11) While it is true that the ACFFOD recognizes the United States as holding a water right in UKL in its capacity as trustee for the Klamath Tribes, which dates from time immemorial, the ACFFOD expressly states that "any exercise of the water rights [held in trust for the Klamath Tribes] shall not result in regulation curtailing use of water under any water rights having a priority date before August 9, 1908." *Rietmann Dec.,* Exhibit 3, Pg. 9. Since the water rights of Plaintiff and Reclamation that are at issue in this case each have 1905 priority dates, the water rights the United States holds in trust for the Klamath Tribe are legally incapable of restricting the exercise of either water right at issue. Thus, the interests of the Klamath Tribes do not relate to the subject of this action.

In short, the Applicants have no significant protectable interest in the subject matter of this litigation.

//

C.    *Any Interest the Applicants May Have Will Not Be Impaired or Impeded by the Decision in This Case*

Applicants argue they have met their "minimal" burden to demonstrate an impairment of its fishing interests because Plaintiff seeks to enjoin Defendants from "from limiting the amount of water that [Plaintiffs] are able to beneficially use under their water rights."    (Doc. No. 21 at 28.)    Again, Applicants inaccurately characterize Plaintiff's claims and the relief it seeks.

Courts have held that a proposed intervenor's interests will not be impacted where there is a process by which the intervenor may still seek to vindicate its claims.  *See California ex rel. Lockyer v. United States*, 450 F.3d 436, 443 (9th Cir. 2006) ("Even if this lawsuit would *affect* the proposed intervenors' interests, their interests might not be *impaired* if they have 'other means' to protect them."); *Newby v. Enron Corp.*, 443 F.3d 416, 422 (5th Cir. 2006) ("Intervention generally is not appropriate where the applicant can protect its interests and/or recover on its claim through some other means.") (quoting *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 526 (5th Cir. 1994)); *Alisal Water Corp.*, 370 F.3d at 921 (no impairment where proposed intervenor could submit claims through a claims process set up by a receiver).

The only protectable interest the Applicants have identified here are: (1) federal reserved water rights in UKL reservoir that the United States holds in trust for the Klamath Tribes and federally protected fishing rights of the Applicant Hoopa Tribe, which entitle them to a 50% allocation of the available harvest on their reservation 200 miles south of UKL reservoir.  Plaintiff disputes that these are protectable rights that

relate to the underlying litigation.  Nevertheless, even if they could be so construed, these rights will not in any way be impaired or impeded by a decision on Plaintiff's claims in this case.  As made abundantly clear throughout Plaintiff's FAC, Plaintiff is seeking only to prevent Defendants from appropriating its water rights ***unlawfully***.  If Defendants choose, or alternatively when this Court so orders, they may ***lawfully*** appropriate any water rights they require, whether to satisfy requests by the Tribe or for other reason.

The only way in which the Applicants' protected fishing rights could be impaired is if a series of unlikely events occurs, as described above. Then, and only then, might the Applicants rights be impaired. Nothing in any order of this Court would prevent the Applicants from seeking their own remedies against Defendants, in the event Defendants fail to honor a water right claimed by the Applicants.  The Applicants have significant alternate remedies to safeguard its own rights.   *Lockyer*, 450 F.3d at 443; *Newby*, 443 F.3d at 422; *Alisal Water Corp.*, 370 F.3d at 921. For example, to the extent the Applicants have senior federal reserved water rights, this action will not prevent Applicants from exercising them to curtail Plaintiff's water rights in accordance with law. Applicants may protect their asserted interests using the citizen suit provisions of the Endangered Species Act. Applicants may bring legal actions to compel the United States to exercise authorities it actually does possess to increase flows in the lower Klamath River from other water sources. *San Luis & Delta-Mendota Water Auth. v. Haugrud*, 848 F.3d 1216, 1227 (9th Cir 2017), *as corrected (Mar. 23, 2017)*. Applicants may seek to

compel the United States to obtain additional water ***through lawful means*** to protect the Applicants' interests. Any number of other options exist.

> D.    *Whatever Interest the Applicants Have is Adequately Represented by Reclamation, Which Acts as Trustee for the Tribes*

According to the Applicants, Defendants here cannot adequately represented its interests for three reasons:  (1) because Defendants will not make every argument the Tribes would make; (2) because Defendants have a conflict of interest in representing the Tribes' interests; and (3) because of the history of the conflicts between the Tribe and the U.S. Government.  (*See* Doc. No. 21 at 29–36.)  Even if the Tribes could demonstrate they have a protectable interest and that such interests may be impaired by the litigation, none of the proffered reasons shows Defendants will not adequately represent the Applicants' interests.

The Court does consider the following three factors recited by the Applicants in determining whether representation is adequate:  (1) "whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments"; (2) "whether the present party is capable and willing to make such arguments"; and (3) "whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect."  *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003).[3]    However, "[t]he most important factor in determining the adequacy of

---

[3] While courts have said that a showing of inadequacy of representation need only be "minimal," this is again premised on a desire to permit expansive intervention to broaden access to the courts.  *See Arakaki*, 324 F.3d at 1086.  Given the Tribe's professed desire to seek early dismissal of this case on a grounds unrelated to the merits, Plaintiff encourages this Court not to apply the standard minimal considerations.

representation is how the interest compares with the interests of existing parties," and "[w]hen an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises." *Id.*; *see also League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1305 (9th Cir. 1997). "If the applicant's interest is identical to that of one of the present parties, a compelling showing should be required to demonstrate inadequate representation." *Arakaki*, 324 F.3d at 1086. This presumption increases when a party to the suit is a governmental agency and the proposed intervenor one of its constituents. *See Id.* ("In the absence of a 'very compelling showing to the contrary,' it will be presumed that a state adequately represents its citizens when the applicant shares the same interest.") (quoting 7C Wright, Miller & Kane, § 1909, at 332.) "[M]ere [ ] differences in [litigation] strategy . . . are not enough to justify intervention as a matter of right." *Perry v. Prop. 8 Official Proponents*, 587 F.3d 947, 954 (9th Cir. 2009) (quoting *United States v. City of Los Angeles*, 288 F.3d 391, 402–03 (9th Cir. 2009)).

The Applicants' representation that Defendants are unwilling to make the Applicants' argument that it is a necessary party and yet has sovereign immunity do not provide a basis to conclude that the Applicants' interests are not represented. Seeking dismissal on such a basis—that a party is both necessary and indispensable, but also protected by sovereign immunity that it will not waive, thus requiring dismissal of the suit—is simply a litigation tactic, albeit an atypical one. It in no way speaks to the merits of the case. Instead, it is an attempt by the Applicants to both inject themselves into a

case that does not concern them, by arguing that the eventual consequences of the suit will impair their rights (which are held in trust by the United States), while simultaneously arguing that they cannot be brought into court without consent, which they will not give.  It is quite transparently a litigation tactic solely designed to prevent Plaintiff from bringing suit against Defendants and asserting its own rights.  The fact that the Applicants disagree with Defendants about the best litigation strategy says nothing about whether the Defendants will adequately represent the Applicants' interests.

Additionally, there is no conflict of interest between the Bureau of Reclamation and the Applicants' interests in this case.  The federal government is charged with safeguarding and protecting reserved federal water rights that the United States holds on behalf of Native American Tribes.  *See* 25 U.S.C. § 5108 (authorizing the Secretary of the Interior to acquire "water rights . . . for the purpose of providing land for Indians").  Numerous courts have commented on the sometimes duplicative role of the federal government in relation to Native Americans, and yet still concluded no conflict of interest exists.  In fact, the U.S. Supreme Court has done so twice:

> [I]t may well appear that Congress was requiring the Secretary of the Interior to carry water on at least two shoulders when it delegated to him both the responsibility for the supervision of the Indian tribes and the commencement of reclamation projects in areas adjacent to reservation lands. But Congress chose to do this, and it is simply unrealistic to suggest that the Government may not perform its obligation to represent Indian tribes in litigation when Congress has obliged it to represent other interests as well.

*Nevada v. United States*, 463 U.S. 110, 128 (1983).  Earlier that same year, the Supreme Court noted:

> We find no merit in the Tribes' contention that the United States' representation of their interests was inadequate whether because of a claimed conflict of interests arising from the government's interest in securing water rights for other federal property, or otherwise. The United States often represents varied interests in litigation involving water rights, particularly given the large extent and variety of federal land holdings in the West. *Arizona v. California*, 460 U.S. 605, 627 (1983); *see also White Mountain Apache Tribe v. Hodel*, 784 F.2d 921, 925 (9th Cir. 1986) ("The Supreme Court has made clear that the federal government's dual role as trustee for the Indians as well as representative of other federal water interests does not disable it from making water claims for the Indians.").

The interests of the Applicants and the interests of the Defendants are, in this case, aligned.  Both dispute Reclamation violated any obligations under the APA or the Reclamation Act in deciding to preserve certain levels of in-stream flows.  Reclamation believes it needs these instream flows to comply with both the ESA and its tribal trust duties. *Rietmann Dec.,* Exhibit 4, Pg. 47 (Environmental Assessment – Klamath Project Operating Procedures 2019–2024, at § 3.7 (noting the tribal trust interest in *C'waam* and *Koptu* species of suckers and in sufficient instream flow to protect interests of Yurok and Hoopa Valley tribes); *Id.* at § 4.9 (considering the impacts of the alternatives on the tribal trust rights).  The Applicants argue likewise, noting that Reclamation is required "to provide downstream flows necessary to avoid jeopardy to SONCC coho," and "the Tribe's federal reserved water right" is even greater than that required under the ESA. (*See* Doc. No. 21 at 15.)

Applicants rely on several cases for the proposition that a federal defendant is not an adequate representative when there are conflicts of interest.  (*See* Doc. No. 21 at 32–33.)  However, each of these cases involved inter-tribal litigation—i.e., conflicts *between different tribes* regarding their respective rights in a share resource.  *See Manybeads v. United States*, 209 F.3d 1164, 1166–67 (9th Cir. 2000) (conflict between Hopi and Navajo tribes); *Quileute Indian Tribe v. Babbitt*, 18 F.3d 1456, 1460 (9th Cir. 1994) ("In disputes involving ***intertribal*** conflicts, the United States cannot properly represent any of the tribes without compromising its trust obligations owed to all tribes.") (emphasis added); *Pit River Home & Ag. Coop. Ass'n v. United States*, 30 F.3d 1088, 1101 (9th Cir. 1994) (same); *Shermoen v. United States*, 982 F.2d 1312, 1318 (9th Cir. 1992) (same); *Confederated Tribes of the Chehalis Indian Res. v. Lujan*, 928 F.2d 1496, 1500 (9th Cir. 1981) (same); *Makah Indian Tribe v. Verity*, 910 F.2d 555, 560 (9th Cir. 1990) (holding United States could not represent absent tribes because tribal interests conflicted amongst themselves).  These cases are all distinguishable because they reflect an understanding that the federal government cannot adequately represent a disagreement between different tribes.  However, the Supreme Court and the Ninth Circuit have both held that the federal government *does* adequately represent tribal interests in conflicts with other, non-tribal parties over water rights.  *See Nevada*, 463 U.S. at 128; *Arizona*, 460 U.S. at 627; *White Mountain Apache Tribe*, 784 F.2d at 925.

The Applicants' attempt to manufacture an inter-tribal conflict between the Klamath Tribes and the Hoopa Valley and Yurok Tribes in this litigation in order to

prevent the United States from being its representative.   The Court should reject this effort which, again, is merely a litigation tactic. Plaintiff in this action is not seeking to compel Defendants to determine which Applicants hold which water rights. Plaintiff is simply seeking to prevent Defendants from seizing or appropriating *its* water rights unlawfully.   The recent opinions adopted by Defendant Reclamation—the 2019 FWS BiOp, 2019 NMFS BiOp, and 2019 OP—make clear that Reclamation intends to continue appropriating Plaintiff's water rights without purchasing or condemning the rights in accordance with Oregon law.   This is what Plaintiff seeks to forestall:   the unlawful taking of Plaintiff's water rights in violation of the Reclamation Act without notice, opportunity for meaningful hearing before a neutral decisionmaker, or compensation.

The history of prior litigation between Reclamation and the Applicants should not serve as a basis for concluding the representation is inadequate.  The Applicants provide no facts suggesting Reclamation would not abide by any lawful orders issued in those cases, which related to good faith disputes about what was or was not required by different provisions of law.   For instance, *Hoopa Valley Tribe v. National Marine Fisheries Service*, 230 F. Supp. 3d 1106 (N.D. Cal. 2017) involved a claim that Reclamation had failed to reinitiate consultation with NMFS, and the Northern District issued an almost-40-page opinion before ultimately concluding Reclamation was required to do so.   Moreover, the cases the Tribe cites to concerning conflicting interests are distinguishable.  In *White v. University of California*, the dispute was between a professor

and the University of California about whether artifacts needed to be repatriated to a tribe. The court noted that while the University and the Tribe's interests were presently aligned, that could change. *See* 765 F.3d 1010, 1027 (9th Cir. 2014). However, the University had no duty to act as trustee for the Tribe, unlike Reclamation. Additionally, the statement the Tribe cites from *Pacific Northwest Generating Co-op v. Brown*, 822 F. Supp. 1479, 1511 (D. Or. 1993) is pure dicta, following the Court's statement that it "need not address the issue of whether the tribes are necessary parties. *Id.* at 1510.

Plaintiff agrees the Applicants have filed many suits against Reclamation concerning the amount of water flowing down the Klamath. This action, however, is not actually about the quantity or timing of instream flows in the Klamath River. It is about Reclamation choosing to unlawfully appropriate water rights in UKL reservoir in contravention of the Oregon water law, the Reclamation Act, the APA, and 5th Amendment to the United States Constitution, rather than following the law as it is perfectly capable of doing, and has even done in the past. *Rietmann Dec.,* Exhibit 6-9.

## 7.    CONCLUSION

Plaintiff does not seek to limit or impair any obligation Reclamation may have to Applicants; rather, Plaintiff merely seeks an order that if Reclamation seeks to appropriate Plaintiff's water, it must do so lawfully. Applicants interests do not relate to the subject matter of this action, their ability to protect those interests is not impaired, and their interests are adequately represented by in this proceeding by their trustee, the United

States.  Consequently, Applicants motion to intervene in this matter as a matter of right should be denied.

DATED this 13th day of September 2019

Respectfully submitted,

RIETMANN LAW, PC

s/ Nathan R. Rietmann

_____
Nathan R. Rietmann, OSB #053630
Attorney at Law
1270 Chemeketa St. NE
Salem, Oregon 97301
503-551-2740
nathan@rietmannlaw.com


WANGER JONES HELSLEY PC

/s/  John P. Kinsey

_____
John P. Kinsey, CASB #215916
265 E. River Park Circle, Suite 310
Fresno, California 93720
(559) 233-4800
jkinsey@wjhattorneys.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2019, I filed a true and correct copy of the foregoing document as well as the supporting Declaration of Nathan R. Rietmann, and all exhibits to the above-referenced documents, with the Clerk of the Court for the United States District court – District of Oregon via the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.


RIETMANN LAW, PC

s/ Nathan R. Rietmann

_____
Nathan R. Rietmann, OSB #053630
Attorney at Law
1270 Chemeketa St. NE
Salem, Oregon 97301
503-551-2740
nathan@rietmannlaw.com